IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

VS.                         CRIMINAL NO.  1:19cr00133

RAY PARHAM


CHANGE OF PLEA HEARING

BEFORE THE HONORABLE LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

NOVEMBER 8, 2019
GULFPORT, MISSISSIPPI

APPEARANCES:

FOR THE GOVERNMENT:
  SHUNDRAL COLE, ESQUIRE
  U.S. ATTORNEY'S OFFICE – GULFPORT
  1575 20TH AVENUE
  GULFPORT, MISSISSIPPI  39501


FOR THE DEFENDANT:
  JOHN WEBER, ESQUIRE
  FEDERAL PUBLIC DEFENDER – GULFPORT
  2510 14TH STREET, SUITE 902
  GULFPORT, MISSISSIPPI  39501


REPORTED BY:  SHERRI L. PENNY, RPR, FCRR
              2012 15TH STREET, SUITE 403
_____

GULFPORT, MISSISSIPPI  39501
(228)563-1751

1          THE COURT:  Madam Clerk, would you please call the
2      first case.
3          DEPUTY CLERK:  The United States District Court for
4      the Southern District of Mississippi, Southern Division.
5      Criminal case number 1:19cr133, United States of America versus
6      Ray Parham, set for change of plea.
7          THE COURT:  What says the government?
8          MS. COLE:  Good morning, Your Honor.  Shundral Cole
9      for the government, and we're ready to proceed.
10         THE COURT:  Good morning, Ms. Cole.  What says the
11     defendant?
12         MR. WEBER:  Your Honor, we're ready.
13         THE COURT:  Good morning, Mr. Weber.  If you and your
14     client would take a place at the lectern, please.
15         Let the record reflect that Mr. Parham is before the Court
16     on a change of plea wherein he intends to enter a plea of
17     guilty to an information, an information which alleges a
18     violation of Title 21 of the United States Code, Section 846,
19     that is Possession with Intent to Distribute a Controlled
20     Substance.
21         Let the record also reflect that Mr. Parham's willingness
22     to plead guilty to this Bill of Information comes as a result
23     of a plea bargain, a plea bargain which has been reduced to
24     writing in the form of a plea agreement and a plea supplement.
25         Mr. Weber, do you have the original of those documents?

1    MR. WEBER:  Yes, Your Honor.

2    THE COURT:  Would you provide them to the Court

3    Security Officer, please.

4    Very well.  The plea agreement in the form of a plea

5    supplement and a written plea agreement have been revealed in

6    open court.  I'll ask that the clerk make them a part of the

7    record.

8    Pursuant to Rule 11(c)(2) of the Federal Rules of Civil

9    Procedure, the plea supplement, of course, will be filed under

10   seal.

11   The Court notes that these documents have been executed by

12   counsel for the government, counsel for the defendant, and by

13   Mr. Parham himself.

14   Good morning, Mr. Parham.

15   DEFENDANT:  Good morning.

16   THE COURT:  Mr. Parham, before I can accept your plea

17   of guilty to this Bill of Information, I will need to ask you a

18   series of questions.  Now, the purpose of the questions I ask

19   you will be to ensure that when you answer them, I'm able to

20   determine whether your plea of guilty is knowing and whether it

21   is voluntary.  And we'll also want to require the government to

22   provide a separate and independent factual basis, that means

23   facts that would sustain this particular charge.  These

24   questions that I ask you, you're required to answer under oath.

25   So would you please raise your right hand, and the Clerk of the

1   Court will administer the oath.

2        (Oath Administered)

3            THE COURT:  Let the record also reflect that Mr.

4   Parham has been before the magistrate judge earlier this

5   morning, Magistrate Judge Walker, wherein he was advised of his

6   right to grand jury presentment and indictment and has executed

7   a Waiver of Indictment after being advised of his right.

8        Mr. Parham, would you please state your full name, sir.

9            DEFENDANT:  Ray Lester Parham, Junior.

10           THE COURT:  Do you pronounce it Parham or Parham?

11           DEFENDANT:  Either or.

12           THE COURT:  What would you prefer?

13           DEFENDANT:  Parham.

14           THE COURT:  Parham.  Mr. Parham, how old are you,

15  sir?

16           DEFENDANT:  Forty-seven.

17           THE COURT:  And tell me, sir, how far did you go in

18  school?

19           DEFENDANT:  Twelfth grade.

20           THE COURT:  Did you graduate from high school?

21           DEFENDANT:  I went to a Job Corps. and got a GED.

22           THE COURT:  Where did you obtain your GED?

23           DEFENDANT:  Atterbury Job Corps.

24           THE COURT:  Where is that located?

25           DEFENDANT:  Edinburgh, Indiana.

1          THE COURT:  Where were you born?

2          DEFENDANT:  Indianapolis, Indiana.

3          THE COURT:  Would you consider yourself an Indiana

4     resident?

5          DEFENDANT:  Yes, sir.

6          THE COURT:  Tell me something about the types of jobs

7     that you have held, Mr. Parham.

8          DEFENDANT:  I've done a little heavy equipment,

9     foundation, (unintelligible) controlling.  And the rest of my

10    time, I've been doing a lot of forklift driving, cherry

11    picking.

12         THE COURT:  Sounds to me like you're an experienced

13    heavy equipment operator, would that be accurate?

14         DEFENDANT:  Yes, sir.

15         THE COURT:  In order to do that, were you required to

16    have any training?

17         DEFENDANT:  Atterbury Job Corps.

18         THE COURT:  You got that at the Job Corps.?

19         DEFENDANT:  Yeah.

20         THE COURT:  Were you required to have any particular

21    licensing or any particular, not going to call it licensing or

22    any -- before they let you get on the cherry picker, for

23    example, did they require you to take a test, get a license?

24         DEFENDANT:  Yes, sir.  I had a couple tests.

25         THE COURT:  What types of licenses did you have to

1  operate heavy equipment?

2  DEFENDANT:  I just went through the OSHA, OSHA

3  program.

4  THE COURT:  All right.  And how long have you been

5  doing that, Mr. Parham?

6  DEFENDANT:  The heavy equipment or just --

7  THE COURT:  Heavy equipment work.

8  DEFENDANT:  I did that for a year, about a year and

9  some months for a company called Fast Steel that is no longer

10  existing.  But after that, like I say, it was just all

11  forklift, warehouse driver.

12  THE COURT:  Of all the heavy equipment that you're

13  able to operate, which one would you say is the most difficult

14  to operate?

15  DEFENDANT:  The scraper.

16  THE COURT:  Tell me why, in your judgment, that's the

17  most difficult one to operate.

18  DEFENDANT:  The scraper has a lot of gears to it, a

19  whole lot of gears to it.  And the way it moves, as far as the

20  position that you can put yourself in, it could throw you off

21  or, you know -- it's a dangerous piece of machinery, so I find

22  it difficult because of the gears, really.  It just has more

23  gears than the others.

24  THE COURT:  But you are experienced in actually

25  operating one?

1           DEFENDANT: Yes, sir.

2           THE COURT: Have you been treated recently for mental

3  illness or addiction to narcotic drugs?

4           DEFENDANT: No, sir.

5           THE COURT: Are you currently under the influence of

6  any drug, medication or alcoholic beverage?

7           DEFENDANT: No, sir.

8           THE COURT: Mr. Parham, have you been provided with a

9  copy of this Bill of Information? Of course, the Bill of

10  Information, that is the charging document in this case, and

11  have you had an opportunity to go over the charge in the Bill

12  of Information and your case in general with your lawyer, Mr.

13  Weber?

14           DEFENDANT: Yes, sir, I have.

15           THE COURT: Did he explain this particular charge to

16  you?

17           DEFENDANT: Yes, sir.

18           THE COURT: And did you understand his explanations?

19           DEFENDANT: Yes, Your Honor.

20           THE COURT: Did Mr. Weber also discuss with you and

21  go over with you possible defenses that you might have to the

22  charge?

23           DEFENDANT: Yes, sir, Your Honor.

24           THE COURT: And did he also discuss with you and

25  share with you the evidence in this case, that is the evidence

that the government would have presented in the event that the case had gone to trial?

DEFENDANT: Yes, sir.

THE COURT: Mr. Parham, are you fully satisfied with the counsel, the representation and the advice that Mr. Weber has given you so far?

DEFENDANT: Yes, sir, I am.

THE COURT: Mr. Parham, it is apparent that you've entered into a plea bargain with the government.  That plea bargain has been reduced to writing and has now been made a part of the record.  I've also noted in the record that you signed the plea agreement and the plea supplement; is that accurate?

DEFENDANT: Yes, sir.

THE COURT: But before you signed those documents, did you have an opportunity to read them and to go over them with your lawyer?

DEFENDANT: Yes, sir, Your Honor, I did.

THE COURT: Did you understand all of the terms and all of the conditions of your plea agreement with the government?

DEFENDANT: Yes, sir.

THE COURT: Mr. Parham, other than the plea agreements that are now part of the record, has anyone made you any other offers or promises or inducements of any kind in

1    order to persuade you to plead guilty?

2           DEFENDANT:  No, sir.

3           THE COURT:  Has anyone threatened you, forced you, or

4    in any manner attempted to coerce you into a plea of guilty

5    here today?

6           DEFENDANT:  No, sir.

7           THE COURT:  Mr. Parham, I noticed in the plea

8    agreement that you have with the government, the government has

9    decided that their responsibility will be to make certain

10    sentencing recommendations.  Specifically, they are going to

11    recommended that the Court sentence you within the applicable

12    advisory Federal Sentencing Guidelines.  Is that also your

13    understanding?

14           DEFENDANT:  Yes, sir.

15           THE COURT:  They're also going to recommended to the

16    Court that the Court make a finding that your responsibility in

17    this case is limited to 2-kilograms of cocaine.  Is that also

18    your understanding?

19           DEFENDANT:  Yes, sir, Your Honor.

20           THE COURT:  Now, Mr. Parham, the government is, of

21    course, required to make those recommendations as part of the

22    plea agreement, but do you understand, sir, that the Court is

23    not required to accept them; in other words, I could very well

24    reject those recommendations and you could be sentenced up to

25    the maximum penalty which is provided by law, do you understand

1  that?

2  DEFENDANT: Yes, sir.

3  THE COURT: Mr. Parham, do you understand, sir, that

4  the maximum penalty for a violation of Title 21 of the United

5  States Code, Section 846, as is alleged in this Bill of

6  Information is a term of imprisonment of not less than five

7  years, and not more than 40 years; a fine which could be as

8  high as $5 million; a term of supervised release of at least

9  four years; and a mandatory special assessment in the amount of

10  $100? Now that is the maximum penalty which is provided by

11  law, do you understand that?

12  DEFENDANT: Yes, sir, I do.

13  THE COURT: Are you aware and do you understand what

14  it means to be placed on supervised release?

15  DEFENDANT: Yes, sir.

16  THE COURT: Have you discussed that with Mr. Weber?

17  DEFENDANT: Yes, I did.

18  THE COURT: Mr. Parham, do you understand, sir, that

19  while on supervised release, if you were to violate any of the

20  terms of your supervised release, that could very well result

21  in a revocation of your supervised release? And if your

22  supervised release were to be revoked, you could be sentenced

23  to an additional term of imprisonment. It could be for the

24  maximum term of supervised release without any credit for the

25  time you had already served on supervised release. Is that

1    your understanding, sir?

2            DEFENDANT:  Yes, sir, Your Honor.

3            THE COURT:  Mr. Parham, I'm sure that you understand

4    that sentencing will not occur today; however, you need to

5    understand before you leave here today that sentencing in the

6    federal system is based on certain factors.  Among those

7    factors, and an important factor is the application of the

8    advisory Federal Sentencing Guidelines.  Now, have you and Mr.

9    Weber discussed how the Federal Sentencing Guidelines might

10   apply to your case?

11           DEFENDANT:  Yes, sir.

12           THE COURT:  Mr. Parham, are you aware, sir, that the

13   Court will not be able to determine your guideline computations

14   or your guideline range until after the probation office has

15   prepared a Presentence Investigation Report, and both you and

16   the government have had a chance to read it and challenge it?

17           DEFENDANT:  Yes, sir.

18           THE COURT:  You understand, also, Mr. Parham, that

19   any predictions or calculations that Mr. Weber may have made on

20   your behalf could be different from the sentence that you

21   receive from the Court?

22           DEFENDANT:  Yes, sir.

23           THE COURT:  Mr. Parham, under some circumstances the

24   Court has the authority to depart, either upward or downward,

25   from the advisory guideline range.  And after the Court has

considered your advisory guidelines, and has also considered
all of the other statutory factors that may apply to your case,
that could result in a sentence that is more severe or is less
severe than that which is called for by these guidelines, do
you understand that?

DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  And do you understand, Mr. Parham, that
these guidelines that I'm referring to, they are not mandatory,
they are advisory.  That means that the Court always retains
the authority, that is the discretion, to sentence you up to
the maximum penalty which is provided by law as we earlier
discussed if, in the judgment of the Court, that is the
appropriate sentence for your particular conduct, do you
understand?

DEFENDANT:  Yes, sir.

THE COURT:  Do you understand that under some
circumstances either you or the government would have the right
to appeal the sentence; however, as part of your plea agreement
with the government, you've agreed that you will waive, now
waiving means to give up, the right to appeal the conviction,
or the sentence imposed in this case on any ground whatsoever;
is that accurate?

DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  I see that you have also agreed that you
will waive, that is give up, the right to contest the

conviction, to contest the sentence, or the manner in which the
sentence is imposed in any post-conviction proceeding; is that
also correct?

DEFENDANT: Yes, sir.

THE COURT: Now, bear in mind, Mr. Parham, that the
rights that you are giving up in your plea agreement, that is
the right to appeal a sentence or to contest it in a
post-conviction proceeding, those are very valuable, and you
should not give up those rights unless you've given it very
careful consideration and talked it over with your lawyer.
Have you discussed with Mr. Weber this particular aspect of
your plea agreement?

DEFENDANT: Yes, sir, I have.

THE COURT: Has anyone made you any side offers,
promises or inducements, or has anyone forced you or threatened
you in order to cause you to waive these rights?

DEFENDANT: No, sir.

THE COURT: Mr. Weber, have you counseled with your
client regarding his willingness to waive the right to appeal
the sentence or to contest it in a post-conviction proceeding
and are you satisfied that those waivers are knowing and
voluntary?

MR. WEBER: Yes, Your Honor.

THE COURT: Mr. Parham, do you understand, sir, that
you have the right to plead not guilty on this Bill of

Information. And if you were to plead not guilty, you would be entitled to a trial by jury. At that trial, you would be presumed to be innocent, and it would be the burden of the government to prove your guilt beyond a reasonable doubt. At that same trial, you would have the right to assistance of counsel, the right to see, and hear, and to cross-examine any of the government's witnesses. You would have the right to call your own witnesses, and if necessary, compel their attendance by subpoena. You, yourself, would have an opportunity to testify. And if you chose not to testify or to present any evidence at all, the jury could not consider your election to remain silent as an indication of guilt or innocence. Now, this is the right to trial, Mr. Parham. And what I'm explaining to you is, in essence, that you have the right to plead not guilty and to go to trial. Do you understand that, sir?

DEFENDANT: Yes, sir.

THE COURT: Do you understand, also, that by entering a plea of guilty to this Bill of Information, and if I accept your plea of guilty, you will be giving up the right to trial and all rights associated with trial as we've just discussed, do you understand that?

DEFENDANT: Yes, sir, Your Honor.

THE COURT: Mr. Parham, you are charged in this Bill of Information, again, with a violation that can be found under

Title 21 of the United States Code, Section 846.  It
specifically alleges that beginning in or around December of
2018, and continuing up to March 13th of 2019, and within this
judicial district, that is the Southern District of
Mississippi, that you did knowingly and intentionally conspire,
that is agree together with others, to possess with the intent
to distribute more than 500 grams, but less than 5-kilograms of
cocaine.  Now, is this the charge to which you wish to plead
guilty?

DEFENDANT:  Yes, sir.

THE COURT:  Once again, Mr. Parham, do you
understand, sir, that were you to plead not guilty to that
charge, the government would be required to prove all of those
facts, and they would have to prove them beyond a reasonable
doubt before the jury could return a verdict of guilty, you
understand that?

DEFENDANT:  Yes, sir.

THE COURT:  Mr. Cole, would you please place into the
record those facts the government is prepared to show in the
event the case had gone to trial.

Mr. Parham, I invite you, sir, to listen carefully to what
the prosecution says about the facts in the case.  We want to
be sure that those facts are accurate.  Your Honor, if put to
its proof at trial the government would show through evidence,
such as witness testimony, audio recordings, video recordings,

and text messages, that beginning in December 2018, an HSI
Confidential Informant was introduced to Ray Parham by Fortrell
Latrae Sain.  Throughout December 2018 through January 2019,
the CI and Mr. Parham engaged in conversations related to the
purchase of cocaine by Parham from the Confidential Informant.
During these conversations, Mr. Parham told the CI that his
cousin, who was later identified as Riondal Taylor, was the
money man and would be coming to Mississippi with Parham to
meet the CI.

On January 18, 2019, Mr. Parham and Mr. Taylor flew into
the Gulfport/Biloxi airport.  The CI picked up Mr. Parham and
Mr. Taylor from the airport and took them to a restaurant in
Gulfport, Mississippi, to discuss the purchase of cocaine.
During the meeting, an undercover agent arrived at the
restaurant and conducted what's known as a flash of 2-kilograms
of actual cocaine.  Mr. Parham and Mr. Taylor reviewed the
cocaine and agreed to purchase it from the Confidential
Informant in the near future.

Conversations between the Confidential Informant and Mr.
Parham continued.  In March of 2019, the CI, under the
supervision of HSI agents, traveled to Indianapolis, Indiana.
On March 13, 2019, the CI contacted Mr. Parham to arrange the
delivery of the cocaine.  Mr. Parham told the CI that he was
unable to meet, but stated that Mr. Taylor would meet the CI to
show some of the money.  The CI called and told Mr. Parham that

he was at a business located in the 1000 block of North Emerson Avenue in Greenwood, Indiana. A short time later, Mr. Parham called the CI and told him that Mr. Taylor was in the parking lot. Mr. Taylor arrived at the location, and the CI approached Mr. Taylor's vehicle. The CI and Mr. Taylor walked to the back of the vehicle, and Mr. Taylor opened the trunk. At that point, Mr. Taylor showed the CI a plastic bag which contained approximately $130,000. The CI told Mr. Taylor that he would contact the driver who had the cocaine. And at that point, the CI then contacted HSI Agent Jason Elder to inform him that the money for the cocaine was in the trunk of the vehicle that Mr. Taylor was driving. At that point, members of the Indiana State Police arrived on scene and arrested Mr. Taylor, and Agent Elder arrived and located the $130,000 that was in the vehicle.

Later that evening, Mr. Parham called the CI and wanted to know what happened with Mr. Taylor. The CI told Mr. Parham that Mr. Taylor showed up and wanted the CI to follow him, but the CI told Mr. Parham that he didn't want to. The CI told Mr. Parham that Mr. Taylor then left, and Mr. Parham asked the CI to meet with him. The CI told Mr. Parham to meet him at a hotel in the 7200 block of Woodland Drive in Indianapolis. At approximately 7:00 p.m. that same day, Mr. Parham arrived at the hotel. As he parked his vehicle, an Indiana State Trooper approached and smelled a strong odor of burnt marijuana coming

from the vehicle.  An Indiana State Trooper narcotic detection canine alerted on the front passenger board of the vehicle. Mr. Parham was then arrested and transported to the HSI Indianapolis office.  He was advised of his Miranda Rights and agreed to make a statement.  Mr. Parham stated that he had received a call from Mr. Sain a few months prior.  And in that phone call, Mr. Sain told him that he had a connection that could provide him with cocaine.  Mr. Parham told agents that he was behind on his mortgage and needed to make extra money, and he stated that Mr. Taylor had the money, so he reached out to him in order to conduct the transaction for the purchase of cocaine.

And Your Honor, this is what the government would've proven at trial if it had been put to its proof.

THE COURT:  Mr. Parham, were you able to hear what the prosecution has told the Court they could prove if the case were to go to trial, sir?

DEFENDANT:  Yes, sir.

THE COURT:  Are those facts true and correct?

DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  Then to the charge pending in this Bill of Information, that is conspiracy to possess with intent to distribute 500 or more grams, but less than 5-kilograms of cocaine, how do you plead, sir, guilty or not guilty?

DEFENDANT:  Guilty, Your Honor.

1          THE COURT:  It is the finding of the Court that the

2     defendant is fully competent and fully capable of entering an

3     informed plea, that he is aware of the nature of the charge and

4     the consequences of that plea.  And it is also the finding of

5     the Court that the defendant's plea of guilty is a knowing and

6     a voluntary plea which is supported by an independent basis in

7     fact containing each of the essential elements of the offense

8     charged.  His plea of guilty is therefore accepted, and Mr.

9     Parham is adjudged guilty of that offense.

10          Mr. Parham, as I told you before, sir, sentencing will not

11    occur today.  Instead, I am going to ask that the Probation

12    Office prepare a Presentence Investigation Report.  Now, that

13    is a very comprehensive report that will assist the Court in

14    determining what the sentence should be in your particular

15    case.  This gentleman seated over here to my left, he is one of

16    the probation officers.  It is likely that he will participate

17    in the preparation of that report, and you may be asked to

18    provide some information during the preparation of the report.

19    If you wish, you may have Mr. Weber present with you during any

20    interview with the probation officer.

21          Prior to sentencing, you will be given an opportunity to

22    read that report, go over it with your lawyer and challenge it

23    if you determine that it is in error.

24          Prior to sentencing you will also be given an opportunity

25    to present additional materials which may touch upon the

1  statutory sentencing factors the Court considers, and you will

2  of course be given the opportunity to speak on your own behalf

3  before any sentence is imposed.

4       Sentencing in this case is scheduled for January the 29th

5  of 2020 at 1:30 p.m. here in Gulfport.  That will be Mr.

6  Parham's next scheduled court appearance.  January 29th, 2020,

7  1:30 p.m. in Gulfport.

8       Anything else on behalf of the government at this time?

9            MS. COLE:  No, Your Honor.

10            THE COURT:  Mr. Weber, anything else on behalf of Mr.

11  Parham at this time?

12            MR. WEBER:  No, Your Honor.

13            THE COURT:  Mr. Parham, I must remand you back to the

14  custody of the United States Marshals.  I'll ask that they

15  return you here on the 29th of January, at which time we'll

16  take up a sentencing hearing.  Thank you, gentlemen.  You may

17  be excused.

18            DEFENDANT:  Thank you, Your Honor.

19                      (HEARING CONCLUDED)

20                         – – –

21

22

23

24

25

CERTIFICATE OF COURT REPORTER

I, Sherri L. Penny, RPR, FCRR, Official Court Reporter for the United States District Court for the Southern District of Mississippi, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings reported by me using the stenotype reporting method in conjunction with computer-aided transcription, and that same is a true and correct transcript to the best of my ability and understanding.

I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.


*S/ Sherri L. Penny*
OFFICIAL COURT REPORTER